The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Laura K. Mavretic. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Companion Property and Casualty Insurance was the compensation carrier on the risk.
4. Plaintiff's average weekly wage was $262.64, yielding a compensation rate of $175.10 per week.
5. Plaintiff's medical records were stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was 53 years old. She has a tenth grade education and has worked as a knitter for over 30 years.
2. Plaintiff's last employment prior to beginning work for defendant-employer was four years as a sock knitter at Wycoff Hosiery. In March of 1994 she began to experience problems with tendonitis in her hands. Plaintiff voluntarily quit her employment with Wycoff and did not work for six to eight weeks. During this period of time, she received conservative treatment from her family physician, Dr. William Mathis, and her condition improved.
3. On April 13, 1994, plaintiff began her employment at defendant-employer as a sock knitter. Plaintiff's job involved repetitive motion in the production of 80 to 100 dozen pairs of socks each day. Plaintiff was responsible for 17 knitting machines. She used both hands to turn each sock inside out to inspect the sock, grouped the socks in dozens, and tied them together with string. Plaintiff also lifted overhead approximately 170 cones of yarn, weighing several pounds each, to place them on the sock knitting machines.
4. After plaintiff had worked a short time for defendant-employer, she began to experience increased pain in her hands, left elbow and shoulders.
5. Plaintiff sought medical treatment from Dr. Mathis and was unable to return to employment with defendant-employer after May 3, 1994.
6. Plaintiff has bursitis in her shoulders due to the repetitive use of her hands and arms in overhead activity. She also has deQuervain's tendonitis in her right hand and epicondylitis ("tennis elbow") in her left elbow due to the repetitive use of her hands and arms involved in her employment with defendant-employer.
7. As a result of her employment with defendant-employer, plaintiff was placed at an increased risk of developing bursitis, deQuervain's tendonitis, and epicondylitis as compared to members of the general public not so exposed. The repetitive work required by plaintiff's employment with defendant-employer caused or was a significant contributing factor in the development of these conditions.
8. As a result of the compensable occupational disease of deQuervain's tendonitis, plaintiff has a ten percent permanent functional impairment to her right hand.
9. As a result of the compensable occupational disease of epicondylitis, plaintiff has a five percent permanent functional impairment to her left arm.
10. As a result of plaintiff's compensable occupational diseases she is unable to return to employment as a knitter. She was unable to work in any employment from May 3, 1994 through June 21, 1994, at which time she began employment as a cook/cashier at Jack B. Quick. At the time of the hearing, plaintiff continued to be so employed.
11. As a result of the compensable occupational diseases, plaintiff was unable to earn the same wages she was earning prior to the contraction of the occupational diseases from June 22, 1994 until September 22, 1994.
12. Under N.C. Gen. Stat. § 97-57, liability rests upon the carrier on the risk during which the employee suffers her last injurious exposure to the hazards of the employment out of which her claim arises. Plaintiff was last injuriously exposed under this definition during the period she worked for defendant-employer from April 13, 1994, through May 3, 1994.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of her employment with defendant-employer, plaintiff developed tendonitis, bursitis, and epicondylitis, which are due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which are not ordinary diseases of life to which the general public is equally exposed outside of the employment. Plaintiff, accordingly, has contracted the above-named occupational diseases. N.C. Gen. Stat. § 97-15(13), (17), (21); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
2. The employer in whose employment the plaintiff was last injuriously exposed to the hazards of the occupational disease shall be liable. N.C. Gen. Stat. § 97-57. Plaintiff was last injuriously exposed to the hazards of these diseases during her period of employment with defendant-employer. Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
3. As a result of plaintiff's compensable occupational diseases, she has been temporarily totally disabled from May 3, 1994 through June 21, 1994, entitling her to compensation at the rate of $175.10 per week from May 4, 1994 through June 21, 1994. N.C. Gen. Stat. § 97-29; 97-52.
4. As a result of the compensable occupational diseases, plaintiff was temporarily partially disabled from June 22, 1994 to September 22, 1994 for which she is entitled to compensation at the rate of two-thirds (2/3) of the difference between her average weekly wage on the date of disablement as a result of the occupational diseases and her earnings during the aforementioned period. N.C. Gen. Stat. § 97-30; 97-52.
5. As a result of the compensable occupational disease of deQuervian's tendonitis, plaintiff sustained a ten percent permanent partial disability to her right hand for which she is entitled to twenty weeks of compensation at the rate of $175.10 per week. N.C. Gen. Stat. § 97-31(12).
6. As a result of the compensable occupational disease of epicondylitis, plaintiff has sustained a five percent permanent partial disability to her left arm for which she is entitled to twelve weeks of compensation at the rate of $175.10 per week. N.C. Gen. Stat. § 97-31(13).
7. Plaintiff is entitled to payment of all medical expenses by defendant-employer as a result of her compensable occupational diseases, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-59.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $175.10 per week from May 4, 1994 through June 21, 1994, at which time she returned to work. This amount has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below.
2. Defendant-employer shall pay plaintiff temporary partial disability compensation at the rate of two-thirds (2/3) of the difference between her average weekly wage on the date of disablement as a result of the occupational diseases and her earnings from June 22, 1994 through September 22, 1994. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendant-employer shall pay compensation to plaintiff at the rate of $175.10 per week for twenty weeks for the ten percent permanent partial disability she sustained to her right hand as a result of the compensable occupational disease of deQuervain's tendonitis. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
4. Defendant-employer shall pay compensation to plaintiff at the rate of $175.10 per week for twelve weeks for the five percent permanent partial disability she sustained to her left arm as a result of the compensable occupational disease of epicondylitis. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
5. Defendant-employer shall pay all medical expenses incurred, or to be incurred, by plaintiff as the result of her compensable occupational diseases, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, when bills for the same have been submitted through defendant-employer to the Industrial Commission and approved by the Commission.
6. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in Paragraphs 1, 2, 3, and 4 of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to her counsel.
7. Defendant-employer shall pay the costs.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 12/14/95